IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HARVETTE CULVER-TAYLOR,

   Plaintiff,

 v.          5:17-cv-00289-MCR-GRJ

EVAN FOSTER d/b/a The Gazebo Coffee Shoppe & Deli

   Defendant.

_____

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM of LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Evan Foster, d/b/a THE GAZEBO COFFEE SHOPPE & DELI (The Gazebo), hereby moves the Court for Summary Judgment on Counts I, II, III, and IV. Summary Judgment is appropriate on all counts as there is no genuine issue of material facts and Defendant is entitled to judgment as a matter of law. In support of this Motion, Defendant submits the following Memorandum of Law as well as supporting affidavits, declarations and documents.

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.     *Introduction*

Defendant is a small business owner who operates a coffee shop and deli in Marianna, Florida.  He is not subject to most of the federal employment laws because of his size and annual income, but Defendant follows the minimum wage and overtime  requirements of the wage and hour laws and prohibits much of the conduct that is covered in both state and federal discrimination statutes.

Plaintiff worked for Defendant in late 2016 and early 2017.  While many of the facts that Plaintiff alleges in her Second Amended Complaint (Complaint) are in dispute, none are material to the Motion to for Summary Judgment.   Plaintiff has not produced any documents to support her claims, and the few that were produced are more help to Defendant than Plaintiff.   She has never provided any damage calculations to support her alleged unpaid wages despite a Court order instructing her to do so.    Furthermore, no reasonable fact finder would find her allegations believable in light of the clear and credible evidence of Defendant.

## II.     Standard of Review for Summary Judgment

In reviewing a Rule 56 motion for summary judgment, a district court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case which must be proven at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317,  106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265(1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the district court that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 2554. After the moving party has satisfied its burden to show the deficiencies in the opposition's case, the nonmoving party must then "go beyond the pleadings" and by affidavits, depositions, answers to interrogatories, and admissions on file, show a genuine issue for trial.   *Id.* at 324, 106 S.Ct. at 2553,  *See also Josendis v. Wall to Wall Residence Repairs, Inc.,* F.3d 1292, 1315 (11th Cir. 2011).  The non-moving party cannot meet its burden with mere speculation, "colorable" evidence or conjecture. *Id.*    In deciding a summary judgment motion, a court must review the facts drawing all reasonable inferences in the light most favorable to the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III.    Statement of the Undisputed Facts

1.    Defendant owns and operates a small deli in downtown Marianna, Florida where he serves breakfast and lunch five days a week from 7:00 a.m. until 3:00 p.m.  The vast majority of his customers are local residents from Jackson County, Florida. [ Exh. 1, Foster Dec., ¶ 1]

2.    During 2015, 2016 and 2017, Defendant's gross sales were less than $ 500,000.   He has no other income other than his income from The Gazebo restaurant and its catering. [ Exh. 1, Foster Dec., ¶ 1]

3.    Plaintiff alleges she was employed at The Gazebo from September 21, 2016 until on or about February 1, 2017. [Exh. 2, Plaintiff's depo., pp. 25-26][1]

4.    According to Plaintiff, she was hired as a [food] preparer, cook and dishwasher, but her primary duty was washing dishes." [ DE 14, ¶ 11].   She did not use the telephone, fax machine, credit card processor, or other instrumentality of commerce during the course of her employment, and she did not purchase supplies.  No food was shipped or prepared for use outside of Florida. [Exh. 1, Foster Dec., ¶ 16]

---

[1]While Defendant disputes Plaintiff's alleged hire date, it is immaterial for resolution of this motion. And, as addressed more fully *infra,* if the Court finds it material then no reasonable fact finder would believe it in light of the contrary evidence.

5.     Plaintiff  was paid $ 9.00 per hour for straight time and $ 13.50 for the hours over 40 recorded on the December time sheets. [Exh. 1, Foster Dec., ¶ 3 and ¶ 5;  Exh. 6, Payroll Worksheets, Bates # 73-75;  Exh. 7, Plaintiff's Paychecks, Bates # 2-25].[2]  Defendant deducted the required amount of income, social security and Medicare taxes from Plaintiff's paychecks. [Exh. 6, Payroll Worksheets; Exh. 1, Foster Dec. ¶ 7; Exhibit 14, Carr, Riggs, and Ingram Review and attached Pay Schedule]

6.     During Plaintiff's period of employment, Defendant did not provide a pay stub with the payroll checks [Exh. 1, Foster Dec., ¶ 13; Exh. 9, Sallaway Dec., ¶ 3]; however, when Plaintiff requested pay stubs on February 1 and February 6, 2017, Defendant provided  wage statements with her pay information. [Plaintiff's Depo. pp. 58-59; Exh. 13, Foster's Note to Plaintiff with Wage Statements]

7.      W-2s for 2016 and 2017 were timely sent to Plaintiff's last  known  address [Exh. 1, Foster Dec., ¶ 13; Exh. 2, Plaintiff's Depo. PP. 54-57]. Plaintiff received both of her W-2s. [Exhibit 15, Plaintiff's W-2s for 2016 & 2107]

---

[2]Plaintiff maintains all of her time on the master time sheets was altered to reduce the number of hours worked.  This disputed fact is immaterial as Defendant is only stating that he paid her for the time listed on the only time sheet that he had in his possession to prepare payroll.

8.     Defendant has never treated any employee as an independent contractor, and Plaintiff was no exception.  [Exh. 1, Foster Dec., ¶ 7]

9.     Employees' work hours are recorded on a single time sheet posted on the wall in the office.  Every employee is required to sign in at the beginning of the work day and sign out when leaving.  [Exh. 1, Foster Dec., ¶ 6; Exh. 9, Sallaway Dec., ¶ 5; Exh. 10, Chance Dec., ¶ 6; Exh. 8, Timesheets]

10.     If an employee forgets to sign-in or out, then the relevant blank space is highlighted by Foster to remind the employee of the oversight.   Foster does not change or alter the  recorded time, and no one is asked or permitted to work "off the clock."  [*Id.*]

11.     Employees are paid weekly on Friday. [Exh. 1, Foster Dec., ¶ 3; Exh. 16 - Gazebo Handbook, p. 14; Exh. 10, Chance Dec., ¶ 8]  Until 2018, Foster manually calculated the payroll and provided handwritten checks each Friday. Defendant has detailed handwritten worksheets showing hours worked, gross pay, the required withholdings, and net pay. [Exh. 6, Payroll Worksheets]

12.     Defendant pays no one in cash, and servers must record all tips. [Exh. 1, Foster Dec.,  ¶ 6 & ¶ 7]

13.     When Foster was served with Plaintiff's Complaint on October 21, 2017,  he immediately contacted his accountant.  Defendant, concerned he had

6

made an error in calculating Plaintiff's pay, requested the accounting firm to review Plaintiff's time and payroll records to determine whether there were any mistakes. [Exh. 1, Foster Dec., ¶ 17] The accounting firm found no errors except for a $ 3.00 shortage in Plaintiff's payroll calculations for week ending December 14, 2016. [*Id.*; Exh. 14, Carr, Riggs and Ingram Letter]

14. Foster timely filed and remitted his federal payroll taxes each month through the Department of Treasury's Electronic Federal Taxpayer Payment System (EFTPS) for all relevant periods. He mailed his quarterly 941 reports to the appropriate address of the Department of Treasury. [Exh. 1, Foster Dec., ¶ 18]

15. Foster filed all RT-6 payroll forms with the Florida Department of Revenue and remitted all unemployment tax. [Exh. 1, Foster Dec., ¶ 15].

16. Plaintiff never provided Defendant with any written notice that her paychecks were inaccurate or that her recorded hours were incorrect. [Exh. 1, Foster Dec., ¶ 13] The relevant Handbook in effect during Plaintiff's employment required employees to report any inaccurate deductions or problems with their paychecks. [Exh. 17, p. 15 - Employee Handbook][3]

---

[3]Plaintiff testified that she did not receive the Employee Handbook and there was no Employee Handbook. [Exh. 2, Plaintiff's Depo. pp. 24-25. For purposes of summary judgment Defendant assumes she did not receive the Handbook but she is not competent to testify that there was none as it clearly existed since 2006.

17.     Plaintiff has provided no calculations of damages for any alleged

unpaid wages for the time she actually worked at The Gazebo or for the time she

allegedly worked at The Gazebo between September 22 and November 11, 2016.

18.     Plaintiff was represented by counsel in this matter from February

2017 until the firm withdrew in May 2018.

### IV.   Disputed Facts that are Immaterial

1.     Plaintiff was interviewed and hired on Saturday, November 12,

2016 and her first day of work was Monday, November 14, 2016.  The last day she

worked was January 31, 2017.     [Exh. 3, DEO Order;  Exh. 1, Foster Dec., ¶2;

Exh. 11, Moore Aff. ¶ 3-4 ; Exh. 9, Sallaway Dec., ¶ 1,; Exh. 10, Chance Dec.¶ 2;

Exh. 12, Plaintiff's Application; Exh. 8, Time Sheets-Bates # 35, 36, 47; Exh. 13,

2-21-17 Note to Harvette with Attachments; Exh. 4, Petition from Case No.: 16-

214ST; Exh. 5, Petition from Case No.: 16,-226RV]

2.     While Plaintiff was employed at The Gazebo, pay stubs were not

given to employees with their paychecks. [Exh. 1, Foster Dec., ¶ 13; Exh. 9,

Sallaway Dec., ¶ 3]

3.     Defendant's workweek begins on Thursday and ends on the following

Wednesday. [Exh. 1, Foster Dec., ¶ 3; Exh.17, p. 14 - Gazebo Handbook; Exh. 10,

Chance Dec., ¶ 8].

*V. Argument*

<u>Count I - Fair Labor Standards Act</u>

In Count I of her Second Amended Complaint (Complaint), Plaintiff attempts to allege a violation of the Fair Labor Standards Act (FLSA).   To be covered by the FLSA, Plaintiff must allege and establish that Defendant is "engaged in commerce or in the production of goods for commerce" as that term is defined by in 29 U.S.C.§ 203c(s)(1) (A).[4]   To establish jurisdiction under the "enterprise theory," an employer must be engaged in interstate commerce and must have "annual gross revenues of $ 500,000 or more (exclusive of excise taxes at the retail level that are separately stated)."   *Id.* at (s)(1)(A)(ii). Defendant has never had annual gross sales of $ 500,000 or more.   [Exh. 1, Foster Dec., ¶ 1]

Plaintiff's conclusory allegation in paragraph six of her Complaint that "Defendant was engaged in interstate commerce, and/or was employed in an enterprise engaged in commerce or in the production of goods for commerce operated within the meaning of 29 U.S.C. § 203(s)(1)(A)" [ DE 14, ¶ 6] is insufficient to establish coverage.   Likewise, her allegation that "Defendant had annual gross volume of sales made or business done" of not less than

---

[4]The term "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.  § 203(b)

$ 500,000 is insufficient to overcome the contrary sworn testimony and documents provided by Defendant.   Plaintiff has not and cannot produce any evidence that Defendant is an enterprise engaged in interstate commerce under the FLSA.

Plaintiff has not alleged that she is covered individually under the FLSA. Presumably this was not an oversight.  Not only does she fail to state that her duties bring her within individual coverage of the FLSA, but her allegations about the nature of her duties foreclose any reasonable inference that she is engaged in commerce or in the production of goods for commerce.   To be engaged in commerce under the individual theory, she must be (i) directly participating in the actual movement of persons or things in interstate commerce by working for an instrumentality of interstate commerce or (ii) by regularly using the instrumentalities of interstate commerce in her work.   The instrumentalities of interstate commerce include the regular and recurrent use of interstate telephone, telegraph, mails or travel.   *Thorne v. All Restoration Serv*.  Inc.  448 F.3d 1264,1266 (11th Cir. 2006)(*citing* 29 C.F.R. § 776.23(d)(2);  29 C.F.R. § 776.24)).

Plaintiff's "primary duty was washing dishes" although she was also a cook-helper and worked in "food preparation." [DE 6, ¶ 11]     Plaintiff did not use the telephone, facsimile, credit card processor or other instrumentality of interstate commerce as part of her job, and she did not purchase supplies.   Her duties of

10

washing dishes, helping the cook and preparing food for consumption in Jackson County did not engage her in interstate commerce as the tasks were purely local in nature. *Id*. (*citing McLeod v. Threlkeld*, 319 U.S. 491, 493-98 (Court found "cook not engaged in commerce when he merely cooked and cleaned for railroad workers"). Plaintiff does not meet the individual coverage requirements, and summary judgment in favor of Defendant on the FLSA count is proper.

<u>Count II - Violation of 26 U.S.C. §7434</u>

In Count Two, Plaintiff seeks to recover under 26 U.S.C. §7434, a section of the Internal Revenue Code that provides damages in a civil action when a plaintiff can establish that "any person willfully files a fraudulent information return with respect to payments purported to be made to any other person. . . ." § 7434 (a). Congress's concern in enacting Section 7434 was to provide a remedy for taxpayers who "suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." *Liverett v. Torres Adv. Ent. Sols. LLC,* 192 F.Supp 3d 648, 653-654 (E.D. Va. 2016)(*quoting* H.R. Rep. No. 104-506 at 35(1996), reprinted in 1996 U.S.C. A. N. 1143, 1158). In the legislative history of section 7434 it is clear that Congress did not want to "open the door to unwarranted or frivolous actions or abusive litigation practices, such as "an unfounded or frivolous

action by a current employee . . . who is not pleased with one or more items that his or her current or former employer has included on the employee's W-2." *Id.*

In pleading her claim under Section 7434 in her Complaint, Plaintiff states "Defendant knowingly and willfully filed a false information return pertinent to Plaintiff" for the purpose of covering up "a failure on the part of Defendant to pay income tax and social security withholdings to the IRS." [DE 14, ¶ 33]. Plaintiff's bold statement is based on "information and belief" and is at odds with her allegations in paragraph 25 of her Complaint.  Paragraph 25, incorporated into Count II, states Plaintiff is "unaware whether or in what amounts taxes were actually withheld" and "if they were withheld . . . whether or not the amounts were . . . paid to appropriate governmental entities." [ DE 14,  ¶ 25]

For Plaintiff to continue to make these statements in her complaint filed nearly a year after receiving her 2016 W-2 and two months after she was provided documentation that federal taxes were withheld and timely remitted to the Department of Treasury is not just frivolous but bad faith.[5]   This is especially true since no evidence has been forthcoming to support her allegations or explain her contradictory pleading.

---

[5]Plaintiff's 2017 W-2 could not form the basis for this claim as the Second Amended Complaint and the first and second complaints were filed before she received her 2017 W-2.

Plaintiff further alleges in Count II that she was damaged because "the amount listed on her 2016 W-2 filed by Defendant was greater than the amount received in compensation." [DE 14, ¶36]   Unquestionably Plaintiff's gross wages were greater than the net wages she actually received which is easily explained in the payroll documents produced to her.  The wage statements, given to Plaintiff in February 2017 [Exhibit 13] and to her attorneys in November 2017, show Defendant paid Plaintiff gross wages of two thousand, one hundred and twenty-three dollars and twenty-five cents ($ 2,123.25) for time she worked in 2016 and that is the gross amount reflected on the  2016 W-2 that Plaintiff received in early February of 2017.  It is also undisputed that Plaintiff received net pay of one thousand, eight hundred and eighty-six dollars and eighty-two cents ( $ 1,886.82) for the time she worked in 2016 ( Exhibit 7, Plaintiff's Cancelled Checks for November and December 2016], and that is exactly the number one would get after subtracting the reported taxes withheld on her 2016 W-2 from the reported gross wages on the same W-2.   There is nothing fraudulent or even incorrect about the information reported on her 2016 W-2.

Plaintiff has produced no documents, damage calculations or other evidence to support the allegations of Count II or any claimed damages.  There

is no evidence that Defendant willfully filed a fraudulent W-2 with the IRS.
The W-2 was exactly as it should be based upon the amount she was paid and
the amount that was correctly withheld for taxes.  Furthermore,  Plaintiff's
repeated insistence on going forward with this claim is exactly what Congress
did not intend when enacting Section 7434.   Defendant accurately reported to
the IRS the wages paid to Plaintiff and the taxes withheld from her gross wages,
and Defendant is entitled to judgment as a matter of law as to Count II.

<u>Count III - Common Law Action for Unpaid Wages</u>

Through Count III of her Second Amended Complaint, Plaintiff seeks to
recover alleged unpaid wages and overtime under Florida's "common law."  As
a matter of law, Plaintiff cannot prevail on a "common law action" for  overtime
because "the Fair Labor Standards Act provides the exclusive remedy for failure
to pay overtime wages.   *Saunders v. Hunter*, 980 F.Supp. 1236 (M.D. Fla.
1997).

To the extent Plaintiff's claim is one for unpaid minimum wage, the claim
must fail also as a matter of law because the Florida Legislature has provided a
remedy for unpaid minimum wages through the Florida Minimum Wage Act, §
448.110, Florida Statutes, and it is the exclusive remedy for minimum wage
violations under Florida law.  § 448.110(10), Fla. Stat.   Plaintiff cannot avail

herself of this statutory remedy, however, as she has failed to plead a cause of

action under section 448.110, and she cannot in good faith allege or claim that

she has satisfied the pre-suit notice requirements of section 448.110(6)(a) that

are a condition precedent to filing suit. [6]

Finally, if Plaintiff is seeking something under Count III other than

minimum wages or overtime, then she has failed to properly plead it. Although

Plaintiff alleges she is "entitled" to recover her unpaid wages pursuant to

Section 448.08, Florida Statutes, Section 448.08 does not create an independent

cause of action.  Section 448.08 is a statutory vehicle for recovering costs and

attorney fees to prevailing parties but does not create a cause of action for

unpaid wages.  *Vega v. T Mobile USA, Inc.*, 564 F.3d 1256, 1270-71 (11th Cir.

2009).   While there may be other common law theories that a plaintiff may

pursue, this Plaintiff has failed to plead them.  Therefore, Defendant asks that

summary judgment be granted and attorney fees and costs awarded to him under

section 448.08, Florida Statutes.

---

[6]Not only did Plaintiff fail to give Defendant the required pre-suit notice that includes the minimum wage sought and details of the amount allegedly due, she has never given Defendant any calculations post suit of her alleged unpaid wages despite repeated requests and an order from this Court. [ DE 18]

## COUNT IV-Common Law Fraud

In Count Four, Plaintiff attempts to allege a "claim for common law fraud" [DE 14, ¶ 44]  presumably under Florida common law since this case was first filed in a state court.  The alleged fraud appears to be based on "material fraudulent representations." [DE 14, ¶ 45]  To set forth a cause of action for fraudulent representation, Plaintiff must allege (i) a false statement of a material fact, (ii) knowledge by the representing party that the statement is false, (iii) an intention by the representing party for the false representation to induce the other party to act on it, and (iv) resulting injury by the party acting in reliance on the false representation.  *Butler v. Yusem,* 44 So.2d 102 (Fla. 2010).

Rule 9(b) of the Federal Rules of Civil Procedure requires a fraud claim to be pled with particularity. *M.G.J. Industries, Inc. v. Greyhound Financial Corporation,* 801 F.Supp 614 (M.D. Fla. 1992).  To meet the particularity requirement, a pleader should specifically identify the fact or facts that were allegedly misrepresented or omitted.  Merely pleading legal conclusions is insufficient.   After three attempts to plead this claim, Plaintiff still does not meet even the basic pleading requirements.

Plaintiff's fraud claim in her original complaint appeared to be based on her far-fetched belief that she was improperly classified as an independent

contractor when she was hired to be an employee.[7]  When Defendant provided

amble documentation in November 2017 to disabuse this fanciful contention,

the fraud count which should have been dropped was contorted even further

through unintelligible and vague pleadings.  Plaintiff now alleges that

"Defendant made material representations of fact to Plaintiff regarding her

earnings, and various deductions from her compensation or the absence of such

deductions."   While Plaintiff does not provide any specific  representations

Defendant allegedly made, Plaintiff does allege that Defendant made "material

misrepresentations of fact regarding her earnings and deductions" on the "check

stubs accompanying and/or describing payroll checks delivered by Defendant."

[ DE 14, ¶45 ]   The undisputed evidence of record shows Defendant did not

provide any employee with a pay stub while Plaintiff was employed much less a

fraudulent one.  Not only did Plaintiff never receive a pay stub with her

paychecks, she has never produced any, and none were identified in her Rule 26

disclosures.   What Defendant did provide was the wage statements in February

2017 and November 2017.   Plaintiff has not alleged how she was induced to

rely on these wage statements to her detriment when she did not receive the

---

[7]The only documentation that Plaintiff produced related to Count IV is correspondence she received from Florida Department of Economic Opportunity. [Exhibit 15].   Perhaps she and her counsel failed to notice that the alleged employer was Fisher & Phillips - not Defendant.

wage statements until after her employment.

Plaintiff alleges that she relied upon "Defendant's false material representations, and as a result of her reliance she was harmed.  It is nonsensical to believe that Plaintiff relied upon "pay stubs rather cryptic in nature" especially when she repeatedly "noticed that the amount she was paid was not consistent with-and less than-she should receive." [DE 14, ¶ 14-16]. Plaintiff alleges she was harmed "through being paid less money than represented, though [sic] not being credited by the Internal Revenue Service for monies withheld by Defendant but no [sic] submitted to the Internal Revenue Service, and/or through risks of and/or actual loss due to the absence of workers' compensation coverage, unemployment compensation coverage, and/or other benefits for which Defendant representing [sic] it was withholding from her compensation." (DE 14, ¶46).[8]

If Plaintiff is claiming that the alleged "pay stubs" or the wage statements, W-2's and the numerous documents produced during litigation incorrectly understate her hours and wages, then she is merely attempting to

---

[8]Plaintiff's allegations of harm set forth in paragraph 46 of the Complaint which really are "rather cryptic in nature" are also nothing more than conjecture and speculation and cannot satisfy even the pleading requirements much less the evidentiary requirements of her claim.

reframe her overtime and minimum wage claims into a fraud case.  However, a FLSA case by any other name is still a FLSA case, and the FLSA is the exclusive remedy to recover unpaid overtime wages." *Saunders v. Hunter*, 980 F.Supp. 1236 (M.D. Fla. 1997).  Likewise, a claim for failure to pay minimum wages must be brought under the Florida Minimum Wage Act, the exclusive remedy for minimum wage violations under Florida law.

There is no credible evidence Defendant made any material fraudulent representation through pay stubs, wage statements or otherwise, and there is clearly no evidence to support her claim for unpaid wages.  Plaintiff has not provided any dates or hours for which she was not paid, and she has not produced any documents that would support any allegation that she worked more hours than the hours recorded on the time sheets.  After a hearing on the matter, the DEO hearing officer did not believe she was hired on September 21, 2016 and accepted Defendant's hire date of November 14, 2016 as the correct starting date. (Exh. 3, DEO order)   Plaintiff was correctly paid for every hour recorded on the only timesheets that Defendant had beginning on November 14, 2016 until her last day on January 31, 2017.   Proper deductions were made and remitted to the Department of Treasury.  An independent review verified it. Summary judgment in favor of Defendant is appropriate for Count IV as well as

the other three counts.

This document contains a total of 4,281 words.

Respectfully submitted this 5th day of July, 2018.


_s/ Rebecca S. Daffin_                    _s/ Cecilia Redding Boyd_
Rebecca Southwell Daffin                  Cecilia Redding Boyd
Florida Bar No.: 0599808                  Florida Bar No.: 0004030
Post Office Box 558                       P. O. Box 69
Panama City, Florida 32402                Panama City, Florida 32402
Phone: 850.769.0017                       Phone: 850.872.8514
Fax: 850.769.7465                         Fax: 866.230.8515

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 5th day of July, 2018, I served a copy of the Motion for Summary Judgment and Memorandum of Law *via* U.S. Mail on the following:

> Harvette Culver-Taylor
> 4267 St. Andrews Andrews Street
> Marianna, Florida 32448

> *Rebecca S. Daffin*
> Rebecca S. Daffin
> Florida Bar # 599808
> 309 Richard Jackson Blvd. # 2000-A
> Post Office Box 558
> Panama City, FL  32402
> Rebecca@daffinlaw.com
> 850.769.0017

21