**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

HARVETTE CULVER-TAYLOR,

      Plaintiff,

v.                                Case No.: 5:17-CV-289-LC/MJF

EVAN FOSTER, d/b/a GAZEBO
COFFEE SHOPPE AND DELI,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before this court on the Defendant's Motion for Summary Judgment in this action brought pursuant to the Fair Labor Standards Act and Florida law. (Doc. 38). Plaintiff, proceeding *pro se*, responded in opposition with a one-page memorandum. (Doc. 45). For the reasons given below, the undersigned respectfully recommends that summary judgment be granted in favor of the Defendant.[1]

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background

### A.    <u>Factual Background</u>

The facts of this case are considered in the light most favorable to the non-moving party, the Plaintiff. *National Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003). In her second amended complaint, Plaintiff alleged that, beginning in September 2016, she worked as a dishwasher and cook-helper for Defendant Evan Foster. (Doc. 14 at ¶ 9). Foster owned and operated "Gazebo Coffee Shoppe & Deli," which served coffee and food in Marianna, Florida. (*id.* at ¶ 6). Plaintiff alleged that "[o]n information and belief," Defendant's annual gross sales were at least $500,000. (*id.*).

Plaintiff alleged that, despite her repeated requests, Defendant failed to provide her with pay statements that stated the amount of taxes that Defendant withheld from her pay. (*id.*). Plaintiff further claimed that Defendant failed to pay her for all of the work she performed and did not pay her a premium for overtime work. (*id.* at ¶ 14). After she requested payment and tax information, the Defendant assigned her an impossible task, and he promptly fired the Plaintiff when she complained about this to a co-worker. (*id.* at ¶¶ 17-18). Plaintiff initially sued the Defendant in state court, but the Defendant removed the case to federal court. (Doc. 1).

### B.    The Four Claims in Plaintiff's Amended Complaint

Plaintiff's second amended complaint contains four counts.

Count one alleges that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay Plaintiff: (1) the required minimum wage; and (2) the required overtime premium wage for any work that exceeded forty hours per week. (Doc. 14 at ¶ 28).

Count two charges that Defendant violated the Internal Revenue Code, 26 U.S.C. § 7434, when he knowingly and willfully filed a false information return in that the amount listed on Plaintiff's 2016 W-2 was greater than the amount Defendant actually paid Plaintiff. (*id.* at ¶¶ 33 & 36).

Count three alleges a "Common Law Action for Unpaid Wages" under "the Florida common law." (*id.* at ¶ 39). Specifically, count three charges that "Defendant failed to pay Plaintiff earned wages" insofar as the Defendant failed to pay Plaintiff for all of the work she performed and failed to pay her the overtime premium wage. (*id.* at ¶¶ 40-41).

Finally, count four alleges that Defendant committed "common law fraud." (*id.* at ¶ 44). Count four alleges that Defendant made material misrepresentations to the Plaintiff regarding her pay and deductions. (*id.*).

## II.    Discussion

### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1356 (1986). The plain language of Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2252 (1986).

However, summary judgment is inappropriate "[i]f a reasonable factfinder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact[.]" *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact is "material" if it might affect the outcome of the litigation under the governing law. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

It is "genuine" if the record, viewed as a whole, could lead a reasonable jury to return a verdict in favor of the non-movant. *See id.*

### B.    Count One: Violation of the Fair Labor Standards Act

Defendant has moved for summary judgment on Plaintiff's claim that the Defendant violated the Fair Labor Standards Act by failing to pay her the requisite minimum wage and overtime premium pay. (Doc. 38 at 9-11).

#### 1.    *Wage Protections Provided Under the FLSA*

When Congress enacted the Fair Labor Standards Act in 1938, its stated goal was to protect America's workers from unhealthy working conditions and reduce unemployment. *Moreau v. Klevenhagen*, 508 U.S. 22, 25, 113 S. Ct. 1905, 1907 (1993); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 902 (1948) (noting that Congress enacted the FLSA "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce"). "The Fair Labor Standards Act was passed by Congress to lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 67 S. Ct. 1473, 1475 (1947). "The Fair Labor Standards Act sought a reduction in hours to spread employment as well as to maintain health." *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 48, 63

S. Ct. 917, 919 (1943); *see Rutherford Food Corp.*, 331 U.S. at 727, 67 S. Ct. at 1475 ("An effort to eliminate low wages and long hours was the method chosen to free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers.").

By establishing a floor for wages earned and a ceiling for hours worked without overtime compensation, lawmakers attempted "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S. Ct. 1186, 1194 (1948). The Act "was designed to aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (internal quotation marks and citation omitted). To that end, § 206 of the FLSA establishes that an employee must receive no less than the statutorily-set minimum wage, and § 207 mandates that an employee who works for more than forty hours per week is entitled to overtime compensation equal to one-and-one-half times his regular rate of pay. 29 U.S.C. §§ 206, 207; *see Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016).

## 2. *Plaintiff Failed to Show that She is Covered by the FLSA*

Defendant argues that he is entitled to summary judgment on Plaintiff's FLSA claim because Plaintiff has not put forth evidence that would convince a reasonable jury that she is covered by the FLSA. (Doc. 38 at 9-11).

Not all workers are covered by the FLSA. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 391-92, 80 S. Ct. 453, 455-56 (1960); *Pioch*, 825 F.3d at 1268; *Ares v. Manuel Diaz Farms Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003); *see e.g.*, 29 U.S.C. § 213. Therefore, an employee seeking to recover under FLSA has the initial burden of establishing that she is covered by the Act. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006); *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999).

Two ways that an employee may be covered by the FLSA are known as "individual coverage" and "enterprise coverage." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8, 105 S. Ct. 1953, 1958 n.8 (1985) ("Employment may be covered under the Act pursuant to either 'individual' or 'enterprise' coverage."); *Thorne*, 448 F.3d at 1265-66 ("Under FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise

coverage or individual coverage."). "An employee may be subject to either type, or both types, of FLSA coverage." *Josendis*, 662 F.3d at 1299.

### (a)    Individual Coverage

Both FLSA § 206 and § 207 apply to any individual employee "who in any workweek is engaged in commerce or in the production of goods for commerce . . . ." 29 U.S.C. §§ 206(a), 207(a). This is known as "individual coverage." *Josendis*, 662 F.3d at 1315 ("An employee is subject to individual coverage if he is *directly* and *regularly* 'engaged in' interstate commerce."). An employee may claim "individual coverage" if she regularly and "directly participat[es] in the actual movement of persons or things in interstate commerce." *Thorne*, 448 F.3d at 1266 (11th Cir. 2006) (citing 29 C.F.R. § 776.23(d)(2) (2005)). For individual coverage to apply under the FLSA, a plaintiff must provide "evidence at trial that he was (1) engaged in commerce or (2) engaged in the production of goods for commerce . . . ." *Thorne*, 448 F.3d at 1266; *see McLeod v. Threlkeld*, 319 U.S. 491, 497, 63 S. Ct. 1248, 1251 (1943) ("The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it."); *Josendis*, 662 F.3d

at 1298; *Martinez v. Jade Palace*, 414 F. App'x 243, 245 (11th Cir. 2011); *Scott v. K. W. Max Invs.*, 256 F. App'x 244, 247-48 (11th Cir. 2007).

Alternatively, the employee can offer proof that she "regularly uses instrumentalities of interstate commerce" in her work. *See* 29 C.F.R. § 776.23(d)(2) (2005); *Thorne*, 448 F.3d at 1266. Instrumentalities of interstate commerce include the regular and recurrent use of interstate telephone, telegraph, mails, or travel. *Thorne*, 448 F.3d at 1266 (citing 29 C.F.R. §§ 776.23(d)(2) & 776.24); *see United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) ("Telephones and cellular telephones are instrumentalities of interstate commerce."). "To establish individual coverage, the employee must present facts showing his own activities" engaged in commerce or regularly used the instrumentalities of commerce. *Martinez v. Petrenko*, 792 F.3d 173, 175 (1st Cir. 2015).

Here, Plaintiff testified that she was a dishwasher and cook-helper at a restaurant that served customers in Marianna, Florida. She offered no evidence that the dishes she washed or the food that she helped prepare traveled in interstate commerce. Also, in washing dishes and helping to prepare food, she does not make "regular and recurrent use of interstate telephone, telegraph, mails or travel" or use of the internet. She has not produced evidence that she used the credit card processor or any type of interstate communication, and Defendant provided evidence that she

did not use "telephone or fax machine for work, or the credit card processor, and she never ordered supplies." (Doc. 39-1 at ¶ 16). Additionally, the Defendant offered evidence that the Plaintiff did not "prepare any food for use out of Florida." (*id.*). Plaintiff, therefore, has not offered evidence that would allow a reasonable jury to conclude that she qualifies for individual coverage under the FLSA.

### (b)    Enterprise Coverage

Likewise, FLSA § 206 and § 207 apply to any employee who "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a); *see Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224, 134 S. Ct. 870, 875 (2014). This is known as "enterprise coverage." *Tony & Susan Alamo Found.*, 471 U.S. at 295 n.8, 105 S. Ct. at 1958 n.8; *Josendis*, 662 F.3d at 1299; *Polycarpe v. E&S Landscaping Servs., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010).

An employee can show enterprise coverage by offering evidence that she is "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see Collar v. Abalux, Inc.*, 895 F.3d 1278, 1281 (11th Cir. 2018). In this context, the term "commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b); *see Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1135 (10th Cir. 2018); *Brennan v.*

*Wilson Bldg., Inc.*, 478 F.2d 1090, 1094 (5th Cir. 1973). The term "enterprise" generally includes the activities performed by a person or persons who are (1) engaged in "related activities," (2) under "unified operation or common control," and (3) have a "common business purpose." 29 U.S.C. § 203(r)(1); *see Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 517, 93 S. Ct. 1138, 1141 (1973); *Josendis*, 662 F.3d at 1298.

In relevant part, an enterprise is engaged in commerce or in the production of goods for commerce if it:

  (i)   has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

  (ii)  is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)–(ii); *see Rodriguez v. Gold Star, Inc.*, 858 F.3d 1368, 1369 (11th Cir. 2017); *Polycarpe*, 616 F.3d at 1220.

Plaintiff has not offered any evidence concerning the Defendant's "gross volume of sales made or business done." On the other hand, the Defendant has presented evidence that his yearly gross sales are less than $500,000. (Doc. 39 at ¶ 1; Doc. 42-1; Doc. 42-2). The requirements found in section 203(s)(1)(A) are stated in the conjunctive, meaning that the Plaintiff has the obligation to satisfy both of

them. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018).
Thus, Plaintiff must offer evidence that the Defendant grossed "not less than
$500,000" per year to trigger enterprise coverage. 29 U.S.C. § 203(s)(1)(A)(ii).
Plaintiff, therefore, has not provided evidence sufficient to allow a reasonable jury
to conclude that she has met the "gross volume" requirement from § 203(s)(1)(A)(ii).
Failure to demonstrate that an employer had not less than $500,000 in annual gross
sales is fatal to an attempt to show enterprise coverage. *Collar*, 895 F.3d at 1281.

Additionally, Plaintiff has offered no evidence that Defendant has employees
engaged in commerce or in the production of goods for commerce, or has employees
handling, selling, or otherwise working on goods or materials that have been moved
in or produced for commerce, as required by § 203(s)(1)(A)(i). In contrast,
Defendant provided evidence his restaurant did not "prepare any food for use out of
Florida" and "did not ship any food out of Florida." (Doc. 39-1 at ¶ 16). Therefore,
Plaintiff has not provided evidence sufficient to allow a reasonable jury to conclude
that she has met the "interstate commerce" requirement in § 203(s)(1)(A)(i). Since
Plaintiff cannot meet either requirement of § 203(s)(1)(A), and must meet both, she
has not shown that enterprise coverage applies. *See Josendis*, 662 F.3d at 1317-19.

Plaintiff, therefore, has failed to demonstrate that she is covered by the FLSA
either through enterprise or individual coverage. Accordingly, the undersigned

respectfully recommends that summary judgment be granted for the defendant on Plaintiff's FLSA claim.

###    B.    Count Two: Violation of the Internal Revenue Code

Defendant also seeks summary judgment on Plaintiff's claim under the Internal Revenue Code. (Doc. 38 at 11).

In count two, Plaintiff seeks to recover under 26 U.S.C. § 7434. Section 7434 of the Internal Revenue Code "creates a private right of action against a company submitting a fraudulent information return . . . ." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 564 (6th Cir. 2007). This statute affords a plaintiff an opportunity to recover damages when the plaintiff can establish that any person willfully filed a fraudulent information return with respect to payments purported to be made to any other person. 26 U.S.C. § 7434(a); *see Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 567-68 (2d Cir. 2011). Congress's concern in enacting Section 7434 was to provide a remedy for taxpayers who "suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." *Katzman*, 660 F.3d at 569 (2d Cir. 2011) (quoting H.R. Rep. No. 104-506 at 35 (1996), reprinted in 1996 U.S.C.A.N. 1143, 1158); *Sims v. Unation, LLC*,

292 F. Supp.3d 1286, 1298 (M.D. Fla. 2018); *Liverett v. Torres Adv. Ent. Sols. LLC*, 192 F. Supp.3d 648, 653-54 (E.D. Va. 2016).

Section 7434 states: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). To establish a claim of tax fraud under § 7434(a), a plaintiff must establish that:

(1)  the defendant issued an information return;

(2)  the information return was fraudulent; and

(3)  the defendant acted willfully in issuing the fraudulent return.

*See Shiner v. Turnoy*, 850 F.3d 923, 925 (7th Cir. 2017) (holding that the defendant's actions must be intentionally fraudulent to prevail on a § 7434 claim); *Crespo v. Midland Credit Mgmt., Inc.*, 689 F. App'x 944, 946 (11th Cir. 2017) (same); *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620 (8th Cir. 2015) (noting that plaintiffs need not allege actual damages); *Vandenheede v. Vecchio*, 541 F. App'x 577, 580 (6th Cir. 2013) (noting that the complaint must contain specific allegations supporting a plausible inference that defendants willfully filed false returns).

As to the *mens rea* elements, because the statute only proscribes "willfully" filing a "fraudulent" return, an "allegation that a person intentionally failed to file a required information return does not state a claim under § 7434." *Katzman*, 660 F.3d at 568. Furthermore, "willfulness requires more than knowledge. To prove willfulness, the plaintiff must show that the defendants, aware of the duty purportedly imposed by Section 7434, specifically intended to flout the statute." *Tran v. Tran*, 239 F. Supp.3d 1296, 1298 (M.D. Fla. 2017); see *Cheek v. United States*, 498 U.S. 192, 201, 111 S. Ct. 604, 610 (1991) ("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.").

Here, Plaintiff alleged that "Defendant knowingly and willfully filed a false information return pertinent to Plaintiff" for the purpose of covering up "a failure on the part of Defendant to pay income tax and social security withholdings to the IRS." (Doc. 14 at ¶ 33). But Plaintiff's allegations are based only on her "information and belief." (*id.*). Additionally, as noted above, Plaintiff has offered no evidence to support any of her claims. Defendant, on the other hand, has provided evidence that the documents filed with the IRS on behalf of Plaintiff are accurate. (Doc. 42-1 & 42-2). The wage statements, given to Plaintiff in February 2017, and to her attorneys

in November 2017, show that Defendant paid Plaintiff gross wages of $2,123.25 for her work in 2016. That is the same gross amount reflected on the 2016 Form W-2 that Plaintiff received in February 2017. (Doc. 39-13 & 39-16). It also is undisputed that Plaintiff received net pay of $1,886.82 for the time she worked in 2016. (Doc. 39-7). That is the difference once the reported taxes withheld on her 2016 W-2 are subtracted from the reported gross wages on the same W-2. (*Compare* Doc. 39-13 with Doc. 39-16). Plaintiff has utterly failed to show that there is anything fraudulent or even incorrect about the information reported on her 2016 W-2, much less that the Defendant willfully issued a fraudulent return.

Therefore, Plaintiff has not offered evidence that would allow a reasonable jury to conclude that the Defendant violated 26 U.S.C. § 7434. On this claim, therefore, summary judgment also should be granted for the Defendant.

### C.   Count Three: Florida Common Law Action for Unpaid Wages

Defendant also seeks summary judgment on Plaintiff's claim for unpaid wages brought pursuant to Florida common law.  (Doc. 38 at 14-15).

In count three of her complaint, Plaintiff claims that the Defendant violated the Florida common law by failing to pay her:  (1) overtime premium wages; and (2) the required minimum wage.

### 1.    *Overtime Wage Claim Under Florida Common Law*

A cause of action exists under state law only when a particular state's statutory or common law so declares. *Ragan v. Merch. Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S. Ct. 1233, 1235 (1949) (noting that federal courts must look to state law to determine the cause of action and a claim brought pursuant to state law "accrues and comes to an end when local law so declares"). Federal courts do not have the authority to create new causes of action under state law. *See Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 223 (3d Cir. 1984) (noting that it is "beyond the authority of a federal court . . . to create entirely new causes of action").

Federal courts "are supposed to apply state law, not rewrite it." *Bonney v. Canadian Nat'l Ry.*, 800 F.2d 274, 280 (1st Cir. 1986); *see Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) (noting that federal courts "rule upon state law as it exists and do not surmise or suggest its expansion"); *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988) (noting that federal courts "are obligated to apply, not to amend, existing state law"). Thus, a "federal court is not the place to press innovative theories of state law." *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 942 (7th Cir. 1986). When state law does not clearly recognize a cause of action on a particular theory, a claim brought on such a theory should be dismissed.

*Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir. 1990); *Burns v. Preston Trucking Co., Inc.*, 621 F. Supp. 366, 370 (D. Conn. 1985).

Here, Plaintiff's amended complaint did not specify the basis for Plaintiff's "common law" claim for overtime premium pay, other than to note that it was based on the common law. (Doc. 14 at ¶¶ 38-42). Plaintiff subsequently has not identified any Florida statue or court decision that creates a cause of action for overtime premium pay. Defendant likewise has not identified any such basis. Finally, the undersigned was also unable to locate any relevant authority that creates or approves of such a claim under Florida law. As noted above, federal courts generally should not create state causes of action and should dismiss cases when a state cause of action does not exist. Accordingly, Plaintiff has failed to state a proper claim for overtime premium pay under Florida law. Summary judgment, therefore, is also appropriate on this claim.

### 2.    *Minimum Wage Claim Under Florida Common Law*

To the extent Plaintiff's claim is a common law claim for unpaid minimum wages, it fails because this claim is governed by the Florida Minimum Wage Act. Fla. Stat. § 448.110.

Article X of the Florida Constitution provides that "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida."

Fla. Const. Art. X, § 24(c). Section 24 of the article further provides that the "state legislature may by statute establish additional remedies or fines for violations of this amendment, raise the applicable Minimum Wage rate, reduce the tip credit, or extend coverage of the Minimum Wage to employers or employees not covered by this amendment." Fla. Const. Art. X, § 24(f). Based on Article X's grant of authority, the Florida legislature enacted the Florida Minimum Wage Act. *See* Fla. Stat. § 448.110. By its own terms, that Act is the exclusive remedy for minimum wage violations under Florida law. *See* Fla. Stat. § 448.110(10) ("This section shall constitute the exclusive remedy under state law for violations of s. 24, Art. X of the State Constitution."); *Montes v. M&M Mgmt. Co.*, No. 15-80142-CIV, 2015 WL 40777463, at *5 (S.D. Fla. July 6, 2015); *but see Bates v. Smuggler's Enter., Inc.*, No. 2:10-cv-136-FtM-29DNF, 2010 WL 3293347, at *4 (M.D. Fla. Aug. 19, 2010).

Accordingly, to the extent that Plaintiff is seeking a Florida common law remedy for unpaid wages, the Florida Constitution has made the statutory remedy the exclusive remedy. Federal courts cannot create state common law causes of action when that state's legislature has already created an "exclusive" remedy. Furthermore, even if Plaintiff's claim was an attempt to assert her rights under the Florida Minimum Wage Act, she has failed to satisfy the statute's pre-suit notice requirements. That is, before filing suit, a Plaintiff must send a letter to the employer

"identify[ing] the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." Fla. Stat. § 448.110(6)(a); *see Montes*, 2015 WL 40777463, at *5 (noting that prior to filing a claim for unpaid wages, the aggrieved party must notify the employer alleged to have violated §448.110). Furthermore, after sending notice to the employer, an employee is required to wait fifteen days after receipt of the notice before filing suit. Fla. Stat. § 448.110(6)(b); *see Montes*, 2015 WL 40777463 at *5-6. If the employer does not pay the amount demanded by the employee before the conclusion of the fifteen-day period, then the employee may file suit. *id.*

Federal courts must apply state substantive law to pendant state law claims. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010); *Golden Oil Co., Inc. v. Exxon Co., USA*, 543 F.2d 548, 551 n.5 (5th Cir. 1976). Although no federal appellate court has discussed the application of this pre-suit notice requirement to federal cases, several district courts have. For example, in *Curry v. High Springs Family Practice Clinic & Diagnosis Ctr. Inc.*, No. 1:08-CV-00008-MP-AK, 2008 WL 5157683, at *9 (N.D. Fla. Dec. 9, 2008), the district judge concluded that "[b]ecause the pre-suit notice is a condition precedent to filing a claim under § 448.110, this court considers the pre-suit notice to be an element of the claim

that the Plaintiff has the burden of proving." *Curry* held that this Florida notice requirement is substantive and, therefore, a federal court must apply it. *Id.* (citing *Redmond v. Astrazeneca Pharms. LP*, 492 F. Supp.2d 575, 578 (S.D. Miss. 2007); *Baber v. Edman*, 719 F.2d 122, 123 (5th Cir. 1983)); s*ee also Dominguez v. Design by Nature Corp.*, No. 08-20858-CIV, 2008 WL 4426721, at *6 (S.D. Fla. Sept. 25, 2008); *Resnick v. Oppenheimer & Co.*, No. 07-80609-CIV, 2008 WL 113665, at *3 (S.D. Fla. Jan. 8, 2008); *but see Throw v. Republic Enter. Sys.*, No. 8:06–cv–724–JSM–TBM, 2006 WL 1823783, at *2 (M.D. Fla. June 30, 2006) (holding that the pre-suit notice provision violates the Florida constitution because the legislature lacks the power to impose an additional requirement on the exercise of a constitutional right).

Although the Florida Supreme Court has not considered the pre-suit notice requirement of § 448.110, other Florida courts have interpreted other Florida statutes requiring pre-suit notice (such as Fla. Stat. § 766.106, which requires pre-suit notice to medical providers prior to filing a medical malpractice claim), and have concluded that the plaintiff has the burden of proving that the required pre-suit notice was sent to the defendant prior to filing suit. *See, e.g., Lederer v. Orlando Utils. Comm'n*, 981 So.2d 521, 522 (Fla. 5th DCA 2008) (discussing whether the plaintiff properly provided pre-suit notice to in compliance with Fla. Stat. § 768.28); *Lifesouth Cmty.*

*Blood Ctrs., Inc. v. Fitchner*, 970 So.2d 379, 380, 381 (Fla. 1st DCA 2007) (dismissing a medical malpractice suit against the defendant because the plaintiffs failed to comply with the pre-suit notice requirement of Florida Statute § 766.106(2)).

Here, Plaintiff has not offered any evidence that she provided the Defendant with the requisite pre-suit notice. Defendant, however, provided evidence that the Plaintiff did not give the requisite notice. (Doc. 39-1 at ¶ 14). Accordingly, Plaintiff has not offered any legal basis for a state law claim—under Florida common law or Florida statutory law—for minimum or overtime wages. Additionally, she has failed to submit sufficient evidence to create a genuine issue of material fact regarding a claim for failure to pay the minimum wage. For all of these reasons, therefore, summary judgment should be granted for the Defendant on count three.

### D.    Count Four: Common Law Fraud

Finally, Defendant seeks summary judgment on Plaintiff's claim for common law fraud. (Doc. 38 at 16).

In count four, Plaintiff attempts to allege a "claim for common law fraud," presumably under Florida common law because this action was first filed in a Florida state court and the actions about which she complains occurred in Florida. (Doc. 14 at ¶¶ 44-46). Plaintiff's claim, however, fails to meet the heightened pleading

standards required in fraud cases. *See* Fed. R. Civ. P. 9(b). Rule 9(b) of the Federal
Rules of Civil Procedure requires that in alleging fraud, "a party must state with
particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *Ashcroft
v. Iqbal*, 556 U.S. 662, 686, 129 S. Ct. 1937, 1954 (2009) (noting that "Rule 9(b)
requires particularity when pleading "fraud or mistake'"). This "particularity rule
serves an important purpose in fraud actions by alerting defendants to the 'precise
misconduct with which they are charged' and protecting defendants 'against
spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt.
Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp.
v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

"The particularity requirement of Rule 9(b) is satisfied if the complaint
alleges 'facts as to time, place, and substance of the defendant's alleged fraud,
specifically the details of the defendants' allegedly fraudulent acts, when they
occurred, and who engaged in them.'" *United States ex rel. Matheny v. Medco
Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (quoting *Hopper v.
Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)). A plaintiff satisfies this
standard if the complaint sets forth "(1) precisely what statements were made in what
documents or oral representations or what omissions were made, and (2) the time
and place of each such statement and the person responsible for making (or, in the

case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted); *see FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). "These factors are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements through alternative means." *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F.Supp.2d 1178, 1187 (S.D. Fla. 2013). A plaintiff's "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).

In this case, the Plaintiff did not clearly articulate the precise misrepresentations purportedly made by the Defendant. In her second amended complaint, Plaintiff alleged that "Defendant made material representations of fact to Plaintiff regarding her earnings, and various deductions from her compensation or the absence of such deductions, such misrepresentations made in or on, among other things, check-stubs accompanying and/or describing payroll checks delivered by Defendant." (Doc. 14 at ¶ 45). She further alleged that "Defendant knew that Plaintiff was entitled to be paid for hours worked. For further example, Defendant

knew that Plaintiff was entitled to be paid at the rate required by law for overtime hours." (*id.*).

Plaintiff's vague allegations fail to inform the Defendant and this court about the "precise misconduct" that the Plaintiff alleges. *See Durham*, 847 F.2d at 1511; s*ee also Seville Indus. Mach. Corp*, 742 F.2d at 791 (noting that the plaintiff is required "to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged). Her allegations fail to specify Defendant's specific misrepresentations and also fail to not how these alleged misrepresentations were false. Her complaint similarly fails to specify the exact (or even approximate)  number of misrepresentations the Defendant allegedly made or the dates these misrepresentations allegedly occurred.

Also, Plaintiff alleged that she was harmed by "being paid less money than represented, through not being credited by the Internal Revenue Service for monies withheld by Defendant but [not] submitted to the Internal Revenue Service, and/or through risks of and/or actual loss due to the absence of workers' compensation coverage, . . . and/or other benefits for which Defendant representing it was withholding from her compensation." (Doc. 14 at ¶ 46). As noted above, however, the Plaintiff offered no evidence to support these claims. Furthermore, Defendant

has submitted evidence demonstrating that the amounts he paid the Plaintiff, the amounts stated on the payroll worksheets, the amounts deducted from her pay, and the amounts listed on Plaintiff's W-2 forms all comport with each other. (Doc. 39-13 & Doc. 39-16).

Plaintiff never responded directly to this evidence. Instead, in her response to Defendant's motion for summary judgment, Plaintiff argued that her fraud claim is based on Defendant listing her as an independent contractor and not paying state and federal taxes on her behalf. (Doc. 45 at 1-2). Plaintiff did not state with particularity: (1) the number of times that Defendant listed her as an independent contractor; (2) the approximate dates this occurred; (3) the documents in which the Defendant so listed the Plaintiff; or (4) how this damaged the Plaintiff. For his part, the Defendant offered evidence that never listed Plaintiff or any other employees as independent contractors. (Doc. 39-1 at ¶ 7). Defendant also provided evidence that he paid all requisite state and federal taxes. (*id.* at ¶¶ 16-18). Plaintiff, on the other hand, has not offered any evidence in support of her vague claims.

Plaintiff, therefore, has not satisfied the particularly requirement in her complaint. Additionally, she has not offered evidence sufficient to allow a reasonable jury to find that Defendant committed fraud regarding her pay, deductions from her pay, or tax payments the Defendant made or failed to make on

Page 26 of 27

her behalf. Summary judgment, therefore, also should be granted for the Defendant on count four.

## III.   Conclusion

Accordingly, for the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.   The Defendant's Motion for Summary Judgment (Doc. 38) be **GRANTED**.

2.   The Clerk of the Court be directed to close the case file.

At Panama City, Florida, this 22ⁿᵈ day of February 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**